# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**BETTY STATES,**

       **Plaintiff,**

vs.

                                                   **Civ. No. 03-750 LCS**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security**
**Administration,**

       **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 6) filed October 22, 2003. The Commissioner of Social Security ("Commissioner") issued a final decision denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff filed a Memorandum in support of her motion on October 22, 2003 (Doc. 7); Defendant filed a Response on December 5, 2003 (Doc. 8), and Plaintiff filed her Reply on December 29, 2003 (Doc. 9). Having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being fully advised, I find the Plaintiff's motion is not well-taken and recommend that it be denied.

**Standard of Review**

    1.    The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health*

*and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(*quoting Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991)(*quoting Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990)(citation omitted)).

2. In order to qualify for supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423 (d)(1)(a)). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment; she has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and her impairment needs or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform the work she had done in the past. 20 C.F.R. § § 404.1520 and 416.920 (2004). *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

**Procedural History**

3. Plaintiff, now 59, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for SSI benefits under Title XVI of the Social Security Act. Plaintiff filed an application for SSI payments on April 13, 2000. R. 14.

Plaintiff's alleged disability was due to osteoarthritis, diabetes mellitus, tension headaches, depression, and anxiety. R. 74, 80. Plaintiff has two years of college and received an Associate's degree in computer applications and has past relevant work as a cashier and sales clerk at K-Mart. R. 42, 76.

4. Plaintiff's claim for SSI was denied at the initial level on August 2, 2000 and at the reconsideration level on August 30, 2001. R. 50-62. Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge. R. 64-65. The ALJ held a hearing on April 25, 2002, at which Plaintiff was represented by Mike Gomez of the Bristol & Gomez Law Firm.

5. Plaintiff testified first about her diabetes and indicated it was under control since she started taking Glucotrol. R. 35. Plaintiff further stated that she had not experienced any retinal or other organ damage due to her diabetes but that her vision is often blurry. R. 36-37. The ALJ asked if she had experienced any numbness in her feet, as many individuals who suffer from diabetes also experience problems with their feet. *Id.* Plaintiff indicated that her feet go numb when she sits for a while and that her toes pop when she walks, though she was not sure if the latter was a function of her diabetes. *Id.*

6. Plaintiff also discussed her difficulties due to arthritis. She testified that if she stood for any length of time or attempted to walk even a half a block, she would experience pain in her back and legs. R. 38. In addition to pain in her legs and back Plaintiff stated that her wrists were weak, her knees gave out, and that she experienced pain in her hips. R. 38. She indicated that bending from the waist down hurt and that her knees popped and hurt when she squats. R. 41. She testified that she takes Celebrex for her arthritis pain.[1] R. 40. The ALJ ordered an orthopedic consultative exam

---

[1] Celebrex is a non-steroidal anti-inflammatory drug and helps to reduce jont tenderness and pain as well as joint swelling. *Physicians' Desk Reference* 2334 (54th ed. 2000).

in order to gather further evidence of Plaintiff's arthritis. R. 45.

7. Plaintiff testified that Dr. Kelley had given her a prescription for Xanax for her tension headaches, stress, and depression and that later Dr. Jinnah gave her a prescription for Paxil for her depression.² R. 39. The prescriptions helped her to sleep better at night but that sometimes she just wanted to go to sleep and never wake up. R. 39, 44. Plaintiff also expressed a feeling of nervousness at the thought of being in an enclosed environment like an office. R. 44. She stated that she visited Dr. Pezzrossie at Counseling Associates two or three times for counseling purposes. R. 41.

8. The ALJ issued his decision on September 19, 2002, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). R. 14-19. At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of her application. R. 18. At the second step, the ALJ determined that Plaintiff had severe impairments consisting of physical impairments relative to diabetes mellitus, osteoarthritis, and headaches. R. 16. The ALJ found that Plaintiff did not have a severe impairment relative to depression or anxiety. R. 15-16. At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments or combination of impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. R. 16. The ALJ also found that Plaintiff was not credible with regard to statements concerning the severity and limiting effects of her symptoms. R. 17. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of light work and was able

---

² Xanax is a benzodiazepine and is the brand name for alprazolam. It is mainly prescribed for the relief of anxiety disorders. *Physicians' Desk Reference* 2492 (54th ed. 2000).

to return to her past relevant work as a cashier and sales clerk. R. 18. Since the ALJ found that Plaintiff could perform her past relevant work, he found that she was not disabled at step four of the sequential analysis. *Id.*

9. Plaintiff filed a Request for Review of Hearing Decision on November 12, 2002. R. 9-10. On November 25, 2002, the Appeals Council denied Plaintiff's request for review. R. 5-7. Hence the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On June 25, 2003, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**Administrative Record**

10. On April 18, 2000, Plaintiff indicated on a disability report that she was suffering from tension headaches, diabetes, and arthritis. R. 75. She reported that she cleaned houses from 1999 to 2000, worked as a clerk through her work study program at Eastern New Mexico University-Roswell ("ENMU-R") from 1997 to 1999, worked as a day care provider from 1994 to 1997, and worked as a sales clerk and cashier from 1992 to 1993 at K-Mart. R. 76, 92.

11. Plaintiff was also examined at the field office on April 18, 2000. R. 84. The claims representative noted that Plaintiff did not have any difficulty with concentrating, sitting, standing, walking, using her hands, or writing. R. 86. Plaintiff did complain that her hands hurt, however. *Id.*

12. In a work history report dated on June 18, 2000, Plaintiff indicated that while working as a house cleaner, she spent time on her knees and eventually had to quit because her hands, knees, and back hurt. R. 95. Plaintiff reported that she worked at the admissions office, library, and computer lab through her work study program at ENMU-R. R. 94. She stated that the job required her to stand on her feet and kneel for extended amounts of time and that the heaviest weight she lifted

5

was 10 pounds. *Id.* In her disability report, she indicated that while working as a day care provider, she lifted 2-6 year old children each day of the working week. R. 76. While working as a sales clerk and cashier she reported that she worked in the automotive department and would frequently lift items that weighed 50 pounds or more. R. 93. However, in a work history report dated on August 8, 2001, she indicated that the heaviest weight she lifted as a cashier in the automotive department was 20 pounds and that she frequently lifted items that weighed 10 pounds. R. 106.

13. In a daily activities questionnaire dated June 18, 2000, Plaintiff indicated that she had little energy and would fall asleep a lot. R. 100. She could start and finish projects and activities, but after finishing an activity, she would need about 3 to 4 hours of rest. R. 100, 101. She had difficulty walking one or two blocks because her knees swelled and gave out. R. 100. Her hands hurt a lot as well. *Id.* She indicated that she could drive, button her clothes, tie her shoes, write a letter, and pick up a pencil off the table. *Id.* She had no difficulty going out in public. R. 101. Finally, when she worked, she could report to work on time and had good attendance, but she could not concentrate for extended periods of time or keep up with her work because her headaches were severe and would make her nervous. R. 102. In a headache questionnaire dated June 18, 2000, Plaintiff stated that her headaches would occur at least once a day and that she would experience a sharp pain in her head and the back of her neck. R. 104. Sometimes the headaches would last for 2 to 3 days and she could not complete routine activities because it would hurt to move. *Id.* She took alprazolam[3] to relieve her headaches. *Id.*

14. In a daily acitivities report dated August 8, 2001, Plaintiff again indicated that she could not walk for one or two blocks due to pain in her back, hips, legs and feet and her knees

---

[3] *See* footnote 2.

continued to give out. R. 113. Plaintiff stated that she could complete activities and projects and that she needed 1 to 2 hours of rest after completing an activity. R. 113, 114. She could still drive, button her clothes, tie her shoes, and pick up a pencil off the table but could not write a letter because she would get cramps in her hand. R. 113. Plaintiff indicated that when she worked, she could report to work on time, had good attendance, could keep up with her work, and could concentrate for extended periods of time. R. 115. In an undated list of her recent medications, Plaintiff indicated that she was taking Glucophage, Glucotrol, Accupril; for high blood pressure, and Celebrex. R. 124.

15. Dr. Kelley, Plaintiff's treating physician, reported that during a consultation with Plaintiff in March 2000, Plaintiff indicated that her hands hurt and that she had a headache. R. 139. Dr. Kelley also gave her a prescription for Xanax. *Id.* On April 5, 2000, Dr. Kelley continued to presribe Xanax and also prescribed Celebrex. R. 138. He also indicated that her cholesterol was high and that Plaintiff was to begin a low-fat diet. *Id.* On April 10, 2000, Dr. Kelley reported that Plaintiff was a newly diagnosed diabetic and that her blood sugar was elevated. R. 136. He also gave her a prescription for Glucophage in order to better control her blood sugar. *Id.* Through the rest of April and May 2000, Dr. Kelley indicated that Plaintiff's blood sugar was high and he increased her dosage of Glucophage. R. 133-135. In June 2000, Dr. Kelley indicated that Plaintiff's heart was regular, her blood sugar level was good, and that she was to continue with her cholesterol medication. R. 130.

16. Plaintiff's next treating physician, Dr. Jinnah, also prescribed Glucophage and Celebrex and added Lipitor in order to control Plaintiff's high cholesterol. R. 146. In April 2001, Dr. Jinnah noted that Plaintiff had fairly good blood sugar control and that there was minimal osteoarthritis of her hands. R. 153. He also indicated that rotation of Plaintiff's hip showed some

discomfort, more on the internal rotation than the external rotation. *Id.* He further noted that Plaintiff should discontinue taking benzodiazepines, like Xanax, for her headaches. *Id.*

17. Dr. Nayak performed a medical evaluation of Plaintiff on August 17, 2001. R. 166. He indicated that Plaintiff's gait was normal and that she was able to walk on her toes and heels and could squat down and get up. *Id.* He noted that she did not have any paraspinal muscle spasm or tenderness. *Id.* Plaintiff's range of motion was normal in both shoulders, elbows, and wrists. *Id.* Arthritis had effected both of her hands and the range of motion in her fingers was limited. R. 166-67. He advised that Plaintiff should be able to do sedentary activities. R. 167.

18. On June 3, 2002, Dr. N. Alexander performed an orthopedic consultative exam on Plaintiff as ordered by the ALJ at the hearing held on April, 25, 2002. R. 168. *See*, R. 45. He noted that she was in no acute distress, that she was able to stoop down and pick up an object with relative ease, though she reported that she was in pain, and she was able to walk on her heels and toes. R. 168. He indicated that she had stable hip, knee, and ankle joints. *Id.* He reported that her hands and the joints in her fingers showed degenerative changes. R. 169. He also indicated that there was crepitance in her left knee. *Id.* No degenerative changes were noted in the lumbar spine. R. 170.

19. In August 2001, Plaintiff went to Counseling Associates in order to receive help with her depression and anxiety. R. 163. She indicated that she had feelings of sadness, difficulty sleeping, fatigue, and low self-esteem. *Id.* Her Global Assessment Functioning ("GAF") was 55 and she was found to have a chronic adjustment disorder with mixed anxiety and depressed mood.[4] R. 163.

---

[4] The GAF scale is used to assess an individual's overall level of functioning, including psychological, social, and occupational functioning, and it is particularly useful in planning treatment. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [DSM-IV]. A GAF of 55 is between a GAF of 50 which indicates serious symptoms or impairments (suicidal ideation, severe obsessional rituals, inability to keep a job) and a GAF of 60 which indicates moderate symptoms (mild panic attacks, few friends). *Id.* at 34.

8

Despite her adjustment disorder, Plaintiff functioned adequately in life and had a history of independence and self reliance. *Id.* It was recommended that she receive individual therapy. R. 165.

**Analysis**

20. Plaintiff contends that the ALJ erred in determining her past relevant work and that the ALJ erred in determining her residual functional capacity. Plaintiff also argues that the ALJ erred in not using the medical vocational guidelines and also erred when he failed to find that she has no transferable skills.

21. Both the ALJ's decision as to Plaintiff's past relevant work as well as his decision as to Plaintiff's residual functional capacity are supported by substantial evidence. Substantial evidence requires more than a scintilla, but less than a preponderance and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

22. Past relevant work is defined as work that was done within the last 15 years, lasted long enough so that Plaintiff could learn how to do it, and was substantial gainful activity. 20 C.F.R. § 416.965 (2004). Using this definition, the ALJ determined that Plaintiff's past relevant work was as a cashier and sales clerk at K-Mart. R. 18. Plaintiff does not question this determination; that is, Plaintiff's argument is not that her past relevant work was not as a sales clerk and cashier at K-Mart. Doc. 7 at 2. Rather Plaintiff argues that the ALJ erred in determining that her work as a sales clerk and cashier was light work. *Id.* In a work history report dated June 18, 2000, Plaintiff reported that while working as a sales clerk and cashier she would frequently lift items that weighed 50 pounds or more. R. 93. Such work would be categorized as medium work. 20 C.F.R. § 404.1567(c) (2004). Plaintiff argues that since her past relevant relevant work was medium work as defined by the

9

Regulations, the ALJ erred in finding that her past relevant work was light work and thus, ultimately erred in determining that she could still perform her past relevant work. Doc. 7 at 2. However, in a work history report dated on August 8, 2001, Plaintiff indicated that the heaviest weight she lifted as a cashier in the automotive department was 20 pounds and that she frequently lifted items that weighed 10 pounds. R. 106. Such work is categorized as light work. 20 C.F.R.§ 404.1567(b) (2004). It is from this work history report that the ALJ determined Plaintiff's work as a sales clerk and cashier at K-Mart was light work. R. 18. Thus, the ALJ's determination that Plaintiff's past relevant work as a sales clerk and cashier was light work as defined by the Regulations is not in error and is supported by substantial evidence since he applied the information that Plaintiff provided in her most recent work history report. R. 106; *See Washington*, 37 F.3d at 1439.

23.     The ALJ's determination of Plaintiff's RFC is also supported by substantial evidence. Starting with Plaintiff's diabetes, Dr. Jinnah noted in April 2001 that her blood sugar was in control. R. 153. At the hearing before the ALJ in April 2002, Plaintiff also expressed that her diabetes was under control with medication and that she had not experienced any organ damage as a result of her condition. R. 35. Plaintiff also complained of tension headaches and reported in June 2000 that they would occur at least once a day and would render her virtually unable to move. R. 104. She took benzodiazepines to relieve her headaches. *Id.* However, in April 2001, Dr. Jinnah recommended that she no longer take these medications. R. 153. Thus, Plaintiff's headaches were to be controlled through over-the-counter medicines. Plaintiff also alleged depression. R. 39. Plaintiff did have a consultation at Counseling Associates in August 2001, where it was noted that her GAF was 55 and that she had a chronic adjustment disorder with mixed anxiety and depressed mood. R. 163. Nonetheless, it was also noted that she had a history of independence and self reliance and that she

10

was able to function adequately in life. *Id.* While Plaintiff indicated that Dr. Jinnah had prescribed Paxil at the hearing before the ALJ, there is no indicator that she continues to take it, nor is there evidence in the medical records that she had any ongoing counseling for her depression and anxiety. R. 39, 124. Thus, with regard to Plaintiff's diabetes, tension headaches and depression, there is substantial evidence in the record that supports the ALJ's assessment that Plaintiff retained a residual functional capacity to do light work. *See Washington*, 37 F.3d at 1439.

24. Plaintiff takes particular issue with the ALJ's residual fucntional capacity determination with regard to her arthritis. Doc. 7 at 3. Plaintiff's complaints of arthritis pain in her hands, wrists, knees, and hips were not supported to the same degree by the the objective evidence. It is well established that the subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gossett*, 862 F.2d at 806. By statute, objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with findings and signs. 42 U.S.C. § 423(d)(5)(A)(Supp. 1998).

25. At the hearing before the ALJ in April 2002, Plaintiff indicated that her wrists were weak, her knees gave out, and she experienced pain in her hips. R. 38. She also indicated pain in her hands. R. 86, 139. In April of 2001, Dr. Jinnah noted that there was minimal osteoarthritis in Plaintiff's hands and that rotation of Plaintiff's hip showed some discomfort. R. 153. In August 2001, Dr. Nayak indicated that Plaintiff could walk on her toes and heels and could squat down and get up. R. 166. He noted that she did not have any paraspinal muscle spasm or tenderness and that her range of motions was normal in both shoulders, elbows, and wrists. *Id.* He did indicate that arthritis had affected both of her hands and that range of motion in her fingers was limited but he did not indicate that Plaintiff had limited use of her hands. R. 166-67. He further found that Plaintiff

11

would be able to do sedentary activities. R. 167. In June 2003, Dr. Alexandar, like Dr. Nayak, noted that Plaintiff could walk on her toes and heels and could stoop down to pick up an object. R. 168. He indicated that Plaintiff had stable, knee, and ankle joints even though there was crepitance in her left knee. 168, 169. Again like Dr. Nayak, Dr. Alexander indicated that there were degenerative changes in Plaintiff's hands and fingers but he did not indicate that these degenerative changes would adversely affect her abililty to use her hands. R. 169. The objective evidence with regard to Plaintiff's arthritis supports the ALJ's assessment that Plaintiff retained the residual functional capacity to do light work. Thus, the ALJ's residual functional capacity assessment that Plaintiff can do light work is supported by substantial evidence and Plaintiff has not met her burden at step four to show that she is unable to perform the work she had done in the past. 20 C.F.R. § § 404.1520 and 416.920; *See Washington* at 1439.

26. Plaintiff's arguments that the ALJ erred by not using the medical vocational guidelines and his failure to find that she has no transferable skills are misplaced as these arguments are not a basis for reversal in the present case because it is a step four case. These two arguments are relevant in a step five case, where Plaintiff has met her burden at step four, showing that she is unable to perform the work she had done in the past, and the burden has shifted to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *See also*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000). As noted, this is not a step five case; it is a step four case. Thus, Plaintiff's final two arguments are wholly irrelevant and the ALJ properly did not make use of the medical vocational guidelines and did not discuss the transferability of Plaintiff's skills. *See id.*

27. The ALJ's determination that Plaintiff's past relevant work as a sales clerk and cashier at K-Mart was light work as defined by the Regulations as well as his determination that she retained the residual functional capacity to do light work are supported by substantial evidence and as such, the decision of the Commissioner should be upheld. *See Washington* at 1439.

**Recommended disposition**

I recommend that Plaintiff's Motion to Reverse and Remand (Doc. 6) filed October 22, 2003 be denied. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the Unitesd States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**